UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:11-CV-351-KSF

JOHN D. TURNER                                                                                               PLAINTIFF

vs.                                     **OPINION AND ORDER**

CITY OF PARIS, KENTUCKY                                                         DEFENDANT

\* \* \* \* \* \* \* \*

This matter is before the Court on the motion of Defendant for summary judgment in its favor. For the reasons discussed below, the motion will be granted.

**I.    BACKGROUND**

Plaintiff was employed by the City of Paris from September 2006 to March 2011 as a collections operator in the wastewater treatment plant. While entering a ditch to install a section of pipe on April 15, 2010, Turner injured his back. He received medical treatment through October 2010, when his treating physician concluded that he had reached maximum medical improvement and should be placed on permanent restrictions to lift not more than 30 pounds occasionally or 10 pounds frequently ("30/10").

While Turner was recovering under worker's compensation and undergoing medical treatment, the City allowed him to perform only "light duty" assignments. Additionally, in September 2010, Turner's request for leave under the Family Medical Leave Act ("FMLA") was granted so he could care for his wife, who suffered a head injury. When Turner's physician determined in October 2010 that Turner's work restrictions were permanent and there would be no further medical improvement, the City attempted to identify a reasonable accommodation that would allow him to perform the essential functions of his job. The City also asked Turner to visit another physician to evaluate further whether Turner could perform these essential functions. That

physician, Dr. Ferrell, agreed with the 30/10 lifting restrictions, but initially suggested that weight loss might improve Turner's condition. The City continued Turner's light duty while he attempted to lose weight. In January 2011, the city asked for clarification from Dr. Ferrell. Ferrell responded that weight loss would reduce the risk of further damage, but would not change Turner's permanent lifting restrictions. Unable to find any reasonable accommodation or other position for which Turner was qualified, the City discharged him on March 7, 2011. Turner unsuccessfully appealed, and his discharge from work became final on March 18, 2011

Turner's lawsuit claims disability discrimination under the Americans with Disabilities Act ("ADA"), FMLA retaliation, and workers compensation retaliation under KRS 342.197. The City seeks judgment in its favor on the grounds that (1) Turner could not perform the essential functions of his job with or without a reasonable accommodation, (2) he was not qualified for other positions that were open, and (3) the City engaged in extensive, good faith efforts under the ADA's interactive process to identify a reasonable accommodation for Turner's permanent lifting restrictions. With respect to Turner's retaliation claims, the City argues there is no evidence that Turner's discharge was causally connected to his medical leave or his worker's compensation claim.

**II.   ANALYSIS**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### A. Turner's ADA Claim

The ADA prohibits discrimination against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual" is defined as an "individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA prohibits "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability...." 42 U.S.C. § 12112(b)(5).

#### 1. Wastewater Treatment Plant Position

Turner contends that he could have performed "his essential job duties with reasonable accommodations," but the City failed to accommodate him. Complaint ¶ 27. An employee has the initial burden of proposing an accommodation and showing that it is "objectively reasonable." *Hedrick v. Western Reserve Care System*, 355 F.3d 444, 457 (6th Cir. 2004). Then, the burden shifts to the employer to show that the accommodation "would impose an undue hardship." *Id.* Determination of the appropriate reasonable accommodation may necessitate that the employer initiate an "informal, interactive process" with the employee. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010). The parties must participate in good faith; however, the employer is not required to propose a counter accommodation. *Id.*

Turner's position was that of a general laborer or maintenance worker ("operator") at the wastewater treatment plant, and his duties included cleaning and maintaining plant equipment and structures inside and outside the plant. One time-consuming job is hosing down the plant basins, which involves unraveling and pulling hoses that range from 100 to 400 feet in length and weigh more than 10 pounds. Operators are required to move chemicals or other supplies that weigh more than 10 pounds, such as 100 pound buckets of chemicals and 25 pound deodorant blocks.

3

Operators also maintain the City sewer lines and lift stations, which requires opening manhole covers weighing nearly 100 pounds and inserting chemicals that are transported in large buckets weighing 30 pounds or more. They must also remove and install sewer pipe lines. Turner admitted he can no longer lift manhole covers or carry the large chemical buckets. He cannot lift heavy equipment or the large pieces of pipe needed for repair work on the sewer system.

Turner does not dispute that the lifting activities were essential functions that exceeded his work restrictions, but claims he could perform those essential duties through "shared lifting." The ADA considers "job restructuring" as one form of "reasonable accommodation." 42 U.S.C. § 12111(9)(B). Within the meaning of the ADA, however, "job restructuring" pertains to the restructuring of "non-essential duties or marginal functions of a job." *Bratten v. SSI Services, Inc.*, 185 F.3d 625, 632 (6th Cir. 1999). While an individual lifting activity might be considered marginal, the overall lifting duties in Turner's position that exceed 10 pounds certainly are not marginal. "[T]he ADA does not require employers to accommodate individuals by shifting an essential job function onto others." *Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 729 (6th Cir. 2000). *See also Peters v. City of Mauston*, 311 F.3d 835, 845 (7th Cir. 2002) ("Peters first requested that someone else do the heaviest lifting for him if he could not handle it, which the district court found unreasonable. We agree and hold that such a request is unreasonable because it requires another person to perform an essential function of Peters' job."). For Turner to have assistance in lifting more than 10 pounds frequently would unquestionably shift essential functions to another employee.

Additionally, such an accommodation would impose an "undue hardship" on the City of Paris. The items to be lifted vary in size, shape, and weight. The City could not ensure that Turner bore no more weight than 30 pounds of a 100-pound manhole or no more than 10 pounds of a 40-gallon bucket of chemicals. It also had legitimate concerns about whether Turner would lift too much weight and risk further injury. Mr. Harney testified: "My concern, as superintendent of the

4

wastewater treatment plant, is if you've got a person that's under a weight restriction that's that minimal – you're always going to run the risk of a person wanting to do more than they know they should do because now they're back part of the crew." Harney Dep. at 112. Mr. Harney's concerns were well taken. Turner's physician noted on his August 23, 2010 visit: "It sounds like he has definitely been exceeding his 30 lb. occasional lifting restriction, and he says he is not tolerating it well." DE 23-3, p. 5 (City 78).

Other courts have rejected proposed accommodations that anticipated frequent assistance from other employees, such as shared lifting, as too disruptive or unfair. *Mertes v. Westfield Ford*, 220 F. Supp.2d 904, 909-910 (N.D. Ill. 2002) (It would have been "so disruptive to the other technicians to require them to perform all the lifting over 10 pounds and repetitive movements of one technician that such a practice would not have been feasible and would have been unfair to all other technicians."); *Bryant v. Caritas Norwood Hosp.*, 345 F. Supp.2d 155, 171 (D. Mass. 2004) (Requiring the employer to shift responsibility for an essential function of any and all heavy lifting to co-workers "would have a deleterious impact on the ability of her co-workers to do their own jobs."). *See also Phelps v. Optima Health, Inc.*, 251 F.3d 21, 26 (1st. Cir. 2001) ("[A]n employer need not exempt an employee from performing essential functions [such as lifting 50 pounds], nor need to reallocate essential functions to other employees.").

The City is entitled to summary judgment on Turner's claim that he was a qualified individual in his position as a wastewater treatment plant operator who should have been accommodated with shared lifting. The requested accommodation was not objectively reasonable, and the City has shown that it would impose undue hardship.

    2.    <u>Recycling Center</u>

In response to the City's summary judgment motion, Turner focuses his argument on his temporary, light-duty work at the Recycling Center and claims that he should have been reassigned to fill one of two Recycling Center vacancies. He further claims that he should have been

accommodated by the installation of a ramp so that he could roll "herbies" into the loading dock, rather than lifting them. DE 29, pp. 3-22. While reassignment to a vacant position is a reasonable accommodation identified by the ADA, the position must be "vacant" and the employee must be "otherwise qualified" for that opening. *Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247, 257 (6th Cir. 2000). "Employers are not required to create new jobs, displace existing employees from their positions, or violate other employees' rights ... in order to accommodate a disabled individual." *Id.*

Turner's information regarding alleged vacancies came from George Wheeler in the Street Department, but the information, unfortunately, was not accurate. Wheeler worked in the Recycling Center for four months while recovering from an injury. The City produced a summary of job vacancies between April 2010 (when Turner was injured) and April 2011 (a month after his discharge). There were no vacant, full-time positions in the recycling center during this time. The only available vacancies required either special licensing (police, EMT) or experience (dispatch, human resources). Turner does not argue that he was otherwise qualified for those vacant positions. Instead, based on Wheeler's testimony, he claims that two recycling center employees retired shortly before Turner's temporary transfer and that the City hired one full-time employee while Turner was working there and hired one shortly after Turner's discharge. Turner claims he should have been hired for these full-time vacancies, rather than someone else.

Turner believed John Seivers retired before Turner began working in the recycling center. Instead, City records show that Seivers began FMLA leave in November 2010 and did not retire until the end of April 2011, after Turner was discharged. The City was required to hold Seivers' position open while he was on FMLA leave; thus, there was no vacancy. The other person identified in Turner's response as having retired was Al Taylor, but City records show Taylor retired in 2005.

Wheeler also thought David Caswell was a new full-time hire at the facility, but Caswell was another temporary assignment while recovering from an injury beginning in January 2011. Caswell

6

was not permanently transferred to recycle until September 2011, six months after Turner was discharged. Turner's argument that there were vacant full-time positions in recycle and that he should have been allowed to fill them is simply without factual support.

Moreover, Turner was not otherwise qualified for a recycling center position if one had existed. First, there is not enough light duty work to occupy an employee full time. Henson Affidavit ¶ 4. Additionally, the City delivers herbies to the recycling center on Monday, Wednesday and Friday. The filled containers may weigh 30 pounds or more. Recycling center employees must lift the herbies over a curb onto the dock to unload and then move them into the center. While the herbies have wheels, moving them requires force to tilt, pull and restore them to an upright position. Residents also deliver recyclables directly to the recycling center in bags or other containers without wheels that could weigh 30 pounds or more. Turner argues that a ramp would keep him from having to lift the herbies onto the curb. A ramp would not, however, prevent him from having to push or pull the herbies into the center. It also would not prevent lifting of bags or other containers brought in by residents. These functions may not require an extraordinary amount of time, but they are still essential functions that Turner cannot perform under his lifting restrictions. An activity is an essential function if "the position exists to perform that function." 29 C.F.R. § 1630.2(b)(3). Recyclables must be moved into the center in order for any other process to be carried out. Accordingly, the accommodation Turner requested is not a reasonable one.

B.  **Turner's Retaliation Claims**

Turner apparently recognizes the weaknesses in his retaliation claims and devotes only a few paragraphs of his Response to them. DE 29, pp. 22-23. He does not dispute that, for his workers' compensation retaliation claim, he must show that: (1) he engaged in a protected activity; (2) his employer knew that he had done so; (3) adverse employment action was taken; and (4) there was a causal connection between the protected activity and the adverse employment action. *Chavez v. Dakkota Integrated Systems, LLC*, 832 F. Supp. 786, 800 (W.D. Ky. 2011). The burden

7

is on Turner to show that his engagement in protected activity, the filing of a workers' compensation claim, was "a substantial and motivating factor but for which the employee would not have been discharged." *Id.* at 800-01. Turner produced no evidence to refute the City's motion for summary judgment on the claim. An eleven-month gap exists between the filing for worker's compensation in April 2010 and Turner's dismissal in March 2011. For temporal proximity to establish an inference of causation, the two events must be "acutely near in time" or "very close in time," typically in the range of three months or less. *See Seeger v. Cincinnati Bell Tel. Co., LLC,* 681 F.3d 274, 283-84 (6th Cir. 2012) (collecting cases). The *Chavez* court held that "[f]our months is not 'very close in time.'" *Chavez*, 832 F. Supp.2d at 800. The City is entitled to summary judgment on this retaliation claim.

Regarding his FMLA claim, Turner argues the five-month period between his FMLA leave in September 2010 and his discharge in March 2011 is "sufficiently close temporal proximity to establish an inference" of causation. DE 29 at 23. In support, Turner cites the state court case of *Dollar General Partners v. Upchurch*, 214 S.W.3d 910, 916 (Ky. Ct. App. 2006), in which termination occurred three months after Upchurch took medical leave and five months after he filed a workers' compensation claim. FMLA claims must satisfy federal law, however. The five months between Turner's FMLA leave and his discharge is not "very close in time" under Sixth Circuit precedent and does not support an inference of causation. Turner's reliance on a hearsay comment allegedly made by an EEOC investigator is not sufficient to avoid summary judgment. In opposition to summary judgment, Turner must present evidence in a "form that would be admissible." Fed. R. Civ. P. 56(c)(2). Turner has presented no admissible evidence that FMLA retaliation factored into his discharge. Accordingly, judgment will be granted for the City.

8

III.      CONCLUSION

**IT IS ORDERED** that Defendant's motion for summary judgment [DE 23] is **GRANTED**.

This December 26, 2012.



Signed By:
*Karl S. Forester* KSF
United States Senior Judge